UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-20556-CR-GAYLES

UNITED STATES OF AMERICA

vs.

CARLOS JAVIER ACEVEDO,

    Defendant.
_____/

### FACTUAL PROFFER IN SUPPORT OF GUILTY PLEA

The United States and Defendant Carlos Javier Acevedo (ACEVEDO) agree that had this matter proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt:

(1)  In December 2009, Anthony Bosch ("Bosch") contacted one of his customer's, ACEVEDO, and offered him a job as a deliveryman. ACEVEDO would deliver monthly programs of testosterone and other substances to Bosch's clients and receive a weekly salary of approximately $200-300 per week. In addition to delivering medication, Bosch asked ACEVEDO to pick up testosterone and other medication from Bosch's source of supply. As ACEVEDO continued to work for Bosch and gained Bosch's trust, Bosch eventually brought ACEVEDO into his clinic and taught ACEVEDO how to prepare various syringes with testosterone and various vitamins. Once ACEVEDO became comfortable with preparing the syringes, Bosch taught ACEVEDO how to inject customers with testosterone and other medication. ACEVEDO continued to assist Bosch at his clinic, until Bosch and ACEVEDO became partners in December 2010. It was at this time that Bosch and ACEVEDO created Biokem, an anti-aging clinic located at Coral Gables, Florida.

(2) At Biokem, ACEVEDO would order testosterone and other substances from co-conspirator Jorge Velazquez ("Velazquez"). ACEVEDO would call and/or text message Velazquez with his order and either Velazquez or his deliveryman, co-conspirator Christopher Benjamin Engroba ("Engroba"), would make the delivery of testosterone and other substances. Upon delivery by either Velazquez or Engroba, an inventory of testosterone and other substances was conducted by ACEVEDO or other clinic employees in the presence of either Velazquez or Engroba. At times, these vials of testosterone had a pharmacy's name on the label. On some occasions, the name of the drug was on the label, but not the pharmacy's name. There were also instances when the medication was delivered and had no label at all. Once the delivery was confirmed, ACEVEDO or another employee would pay either Velazquez or Engroba with a check or cash. Velazquez or Engroba would deliver vials of testosterone to ACEVEDO or Bosch at Biokem on a weekly basis from March 2011 through December 2012. Neither Velasquez nor Engroba was a licensed physician in the State of Florida, or anywhere else, nor did they have any kind of license or authorization from the Drug Enforcement Administration ("DEA") to dispense or prescribe Schedule III drugs, like, testosterone.

(3) In November 2011, ACEVEDO terminated his partnership with Bosch and opened his own anti-aging clinic, Revive Miami. ACEVEDO continued to treat people with testosterone based programs until he abandoned the clinic in November 2012. In December 2012, ACEVEDO began to serve as an anti-aging consultant for a spa, in Coral Gables, Florida. It was during this time that ACEVEDO was introduced to a DEA confidential source ("CS") and an undercover agent ("UC") by co-conspirator Yuri Sucart. From early December 2012 through April 23, 2013, ACEVEDO and Sucart conspired to sell testosterone based programs to the CS and UC. ACEVEDO continued to distribute testosterone until June 7, 2013.

(4) In addition to distributing testosterone, ACEVEDO was also conspired with Giovanny Brenes ("Brenes") and Jorge Canela, Jr. ("Canela") to distribute 3,4-Methylenedioxy-N-Methylcathinone Hydrochloride; also commonly known as "molly." From April 23, 2013 through June 5, 2013, ACEVEDO contacted Canela and Brenes on various occasions and discussed the distribution of one thousand (1,000) molly pills.

(5) Specifically, Canela would contact Acevedo and ask if ACEVEDO was able to acquire one thousand (1,000) molly pills. Acevedo and Canela would discuss the price per pill; confirm the quantity of molly pills orders, and also the quality of the pills. Once ACEVEDO received the order from Canela, ACEVEDO would contact Brenes and order the 1,000 molly pills. Once the order was made, ACEVEDO would meet Brenes and acquire the pills from him. ACEVEDO would then advise Canela that he had the molly pills in his possession and arrange to give the pills to Canela.

(6) On June 1, 2013, Canela met ACEVEDO at his residence and took possession of the 1,000 molly pills. DEA surveillance units observed Canela and ACEVEDO exit the residence and enter their respective vehicles. After Canela departed ACEVEDO's residence, a Miami-Dade Police Department marked unit observed Canela's vehicle commit a traffic violation and conducted a traffic stop of Canela's vehicle. Canela was asked for verbal consent to search the vehicle and Canela agreed. During the search the officer found a gray Walmart plastic bag, hidden under the front passenger seat, which contained approximately 975 pills. The officer asked Canela what the pills were; Canela replied, "Weight loss pills" that he received from "his brother-in-law, Carlos Acevedo." Later testing of the seized pills by the DEA laboratory determined that the pills tested positive for 3,4-Methylenedioxy-N-Methylcathinone Hydrochloride.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 10/10/14

By: _____
MICHAEL P. SULLIVAN
ASSISTANT UNITED STATES ATTORNEY

Date: 10/10/14

By: _____
SHARAD A. MOTIANI
ASSISTANT UNITED STATES ATTORNEY

Date: 10/10/14

By: _____
MARTIN BEGUIRISTAN, Esq.
ATTORNEY FOR DEFENDANT

Date: 10/10/14

By: _____
CARLOS JAVIER ACEVEDO
DEFENDANT